No. 2652

Second Circuit

MOORE v. LOUISIANA OIL REFINING CORPORATION

(June 30, 1926, Opinion and Decree)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Master and Servant —Par. 156, 160 (j).**

The preponderance of evidence shows that the employee did not receive injury complained of while working for the defendant, consequently he cannot recover under the Workmen's Compensation Act No. 20 of 1914.

2. **Louisiana Digest—Master and Servant —Par. 160 (j).**

A payment to the wife of an employee because she said that her husband was sick does not constitute an admission by the employer that the employee was injured in the course of his employment and can recover compensation under the Workmen's Compensation Act No. 20 of 1914.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. T. F. Bell, Judge.

Action by Jim Moore against Louisiana Oil Refining Corporation. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Long and McSween, of Shreveport, attorneys for plaintiff, appellant.

Blanchard, Goldstein and Walker, of Shreveport, attorneys for defendant, appellee.

ODOM, J.   This is a suit under the workmen's compensation act in which plaintiff asks judgment for compensation for total permanent disability for an injury which he claims to have received while at work for the defendant.

The defense is, that plaintiff was not injured while in defendant's employ, and that whatever disability which he is now under was not caused by an injury received by him while at work.

There was judgment rejecting plaintiff's demand, from which he has appealed.

OPINION

Plaintiff, as a witness in his own behalf, said that about July 30, 1925, he does not recall the exact date, while standing on a scaffold ceiling a room he strained his hip—

"I could not say how but when I got down it hurt so bad I could hardly stand up."

This is his full account of the injury which he claims to have received.

It will be noticed that he did not fall from the scaffold but that he says he strained his hip while standing on the scaffold.

The injury of which he complains is alleged to have been sustained on July 30th. He testified that he worked on for the defendant at the same kind of work until August 8th—

"* * * hobbling along. I could not hardly do anything".

He testified that finally he had to give up his work; that he has pains in his hip; that his leg has swollen down to the foot; and that he was unable to work at the time of the trial.

He admitted that he had worked for ten days after the injury of which he complains, and testified that after the injury and just before he left the defendant he assisted a Mr. Waldron in fixing some

jacks and also assisted Mr. Waldron to do some work on the machine shops. He also says that he worked with Mr. Moreland, another carpenter, from the date on which he claims to have been injured until the day on which he finally quit work, but that he "hobbled around".

His testimony is that up to the time he strained his hip he had no trouble with it and that he did not tell any one he was suffering. He says that at the time he did not consider the injury serious, but that his condition gradually grew worse.

As against plaintiff's testimony as to the injury, we have that of Mr. Aylett, who worked with plaintiff during all the time, who says that he heard nothing of the injury; that plaintiff made no complaint of an injury to him; but that some time prior to the date on which he now claims he was injured, in fact when he first started to work, about July 1st, he complained that his hip gave him pain; that he complained of a "catch in it" and that he complained constantly of his hip from the time he began to work and long prior to the date on which he claims to have received the injury.

In fact Mr. Aylett testified that prior to the time either of them went to work for defendant, in a conversation on Spring street in Shreveport, plaintiff told him he had a bad hip.

Mr. Aylett was not employed by defendant at the time of the trial and was not seeking work with it, as he stated he had other work with which he was satisfied.

We have also the testimony of Mr. Moreland, another carpenter, who worked with plaintiff during the entire time he was employed by defendant, to the effect that plaintiff worked under him all the while and did not complain of receiving an injury, and that plaintiff did his work as well in August as he did in July.

Mr. Moreland further testified that plaintiff complained of his hip prior to the time he now claims he was injured and that his complaints were so numerous that no one paid any attention to them at all before July 30th when he claims he was hurt.

Mr. J. S. Waldron, construction foreman for defendant, testified that he was around plaintiff during all the time he was at work and that his work was as satisfactory the last day he worked as it was on the first day and that he knew nothing about the injury until about a month after the work was completed, notwithstanding plaintiff helped him do some work on the machine shops during the last days he was employed by defendant. He said the first he heard of the injury was when he was called to the office of the defendant and asked about it.

H. J. Seacat, who has charge of the claim department of defendant, testified that he received no complaint from plaintiff as to the injury until August 30th, some twenty days after he quit work, and that this information came to him through a letter written by a Mr. Rawlins for plaintiff stating that plaintiff was in bed. He did not state and it was not intimated that the letter recited that plaintiff had received an injury while at work for defendant but merely stated that he was in bed.

The two carpenters, Aylett and Moreland, worked with plaintiff and are no longer employed by defendant, and we can imagine no reason why they should testify falsely against him. If they had been disposed to favor either side it would seem but natural that they should lean towards a fellow workman. These witnesses both testified that plaintiff did not complain of an injury but, on the contrary, they both say that he complained of pains in his hip long before July 30th, the day on which he claims he was injured.

The testimony of Waldron is to the same effect....

The testimony of Seacat is that plaintiff registered no complaint with defendant until the receipt of the letter written by Rawlins on August 30th.

The testimony of these witnesses, unimpeached, is so inconsistent with plaintiff's contention[*] that he was injured while at work as to utterly destroy its effect. If plaintiff had received an injury while at work it seems to us he would in some way have made it known to those who were working with him. Not only that, he would have notified his employer. Again, if he had received such an injury as he now claims he did, he could not have continued to work, and the undisputed testimony is that he continued to work satisfactorily until the defendant had nothing more for him to do and he and the others were discharged for that reason.

Plaintiff called two physicians, Doctor Cassity and Doctor Whiteside. Their testimony does not help his case.

Doctor Cassity found that plaintiff's right leg was larger than the left and not as strong as the other. He found evidence of pain in the right leg, which was probably produced by a disorder of the sciatic nerves and he thinks such a condition could have been caused by a strain of the muscles of the side. He also found some "suspicious" teeth, which can cause a disorder of that nerve.

Doctor Whiteside found soreness and tenderness in the region of the sciatic nerve as did Doctor Cassity.

Defendant called three physicians, Doctor Crain, Doctor Ragan and Doctor Williams.

Doctor Crain was of the opinion that a strain of the hip could cause a disorder of the sciatic nerve and especially so if there was a previous focal infection, and was of the opinion that the sprain or strain of the hip which was not sufficient to immediately incapacitate the patient would not affect the sciatic nerve.

Doctor Ragan was of the opinion a strain would have no effect upon the sciatic nerve and testified that if a man had received an injury to the hip and later had a swollen leg he would look for other reasons for the condition of the leg, unless the injury was severe enough to disable him. His testimony was technical—he did not examine the plaintiff.

Doctor Williams examined the plaintiff and found no evidence of an injury, but said plaintiff was complaining of pain over the area supplied by the sciatic nerve, that is, the hip and the back part of the leg. He examined him at the sanitarium and treated him for sciatic neuritis. He said that sciatic neuritis might be caused by a strain and that there were other causes for it. He testified that, taking into consideration the history of the case and the condition of the patient, he reached the conclusion that plaintiff's condition was "probably due to focal infection arising from his teeth" as plaintiff had several bad teeth.

Considering the testimony of the witnesses who worked with plaintiff during the entire time he was employed by defendant, to the effect that plaintiff was complaining of a bad hip during the entire time he was at work and for practically a month prior to the time he now claims he was injured, and considering the testimony of the physicians, and considering, further, the fact that these witnesses testified positively that plaintiff made no complaint to them of having received any injury while at work, we are of the opinion that whatever disability plaintiff now suffers was due to a condition which existed long prior to his employment by defendant.

And we are further satisfied that the strain of plaintiff's hip, if he really suffered any, did not aggravate or augment his disability.

Defendant paid plaintiff $80.00 on September 19th.

Counsel for plaintiff contend that this payment should be construed as an admission by defendant that plaintiff was injured as alleged, and they cite the case of Johnson vs. Vernon Parish Lumber Co., 151 La. 664, 92 South. 219, where it was said by the court that payments made under the employers' liability act are in the nature of admissions that the plaintiff was entitled to compensation.

A reading of that case discloses that the defendant admitted that it had paid the plaintiff six payments of $16.00 each and "alleges that these covered the period of his disability".

In that case it was not disputed that the plaintiff had received an injury, and by its allegation defendant admitted disability.

In the case at bar, defendant denied that there was an injury and specifically set up that whatever disability plaintiff may have suffered was due to other causes.

In explanation of the payment Mr. Seacat says that plaintiff's wife went to him with a plea for help as her husband was sick, and that there was a custom of the defendant to help its employees when sick, and that he gave her the check without any intention on his part to admit liability.

We do not think that the payment under the circumstances was an admission of liability.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.